UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CALENDER THOMAS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:06-CV-1137-K |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security,[1] | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on September 25, 2006, the subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On March 10, 2004, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits alleging a disability onset date of February 13, 2004, due to severe leg pain. (Administrative Record 70B-70E, 71 [Hereinafter Tr.].)

The Administrative Law Judge ("ALJ") conducted a hearing on June 16, 2005. (Tr. 293-314.) On August 15, 2005, the ALJ denied Plaintiff's request for SSI benefits, finding that she was not disabled because she retained the residual functional capacity ("RFC") to perform her past relevant work. (Tr. 13-17.)

Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on

---

[1] Effective February 12, 2007, Michael J. Astrue was named the Commissioner of Social Security. The caption is being changed pursuant to Fed. R. Civ. P. 25(d).

April 28, 2006, the Appeals Council denied her request. (Tr. 4-6.) Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

Plaintiff filed her federal complaint on June 27, 2006. Defendant filed an answer on September 25, 2006. On January 16, 2007, Plaintiff filed a brief followed by Defendant's brief on March 9, 2007.

Standard of Review–Social Security Claims: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Villa*, 895 F.2d at 1022 (citations omitted). Where the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971)).

Discussion:

To prevail on a claim for SSI benefits, a claimant bears the burden of establishing that he or she is disabled, which is defined as "the inability to do any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).  Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit."  § 416.910.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* § 416.920.  Under the first four steps, a claimant has the burden of proving that her disability prevents her from performing her past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove that there is other substantial gainful activity that the claimant can perform.  *See, e.g.*, *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

In this case, the ALJ proceeded to step four and determined that Plaintiff retained the capacity to perform her past relevant work as a shoe sorter.  (Tr.  16-17.)  She therefore denied Plaintiff's request for SSI benefits.  (Tr.  17.)

Plaintiff first argues that the ALJ erred at step two of the five-step sequential evaluation process when she declined to find that the degenerative joint disease from which Plaintiff allegedly suffered was a "severe" impairment by itself or in combination with Plaintiff's other severe impairments.  *See* § 416.920.

In step two of the evaluation process, the Commissioner must determine whether the claimant has a "severe medically determinable physical or mental impairment...or a combination of impairments that is severe."[2]  § 416.920(a)(4)(ii).  Under the regulations governing disability

---

[2] In this second step, the Commissioner must also determine whether the impairment meets the duration requirement in § 416.909.

3

claims, an impairment (or combination of impairments) is severe if it significantly limits an individual's physical or mental ability to do basic work activities. § 416.921(a). "Basic work activities" include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. § 416.921(b).

The Fifth Circuit Court of Appeals has consistently held that an impairment is "not severe" only if the record reveals that the impairment "is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (citation omitted); *see also Loza v. Apfel*, 219 F.3d 378, 391-92 (5th Cir. 2000) (noting that the circuit continues to apply the definition of "not severe" from *Stone*); SSR 85-28, at *2 (S.S.A. 1985) (acknowledging and noting agreement with *Stone*'s definition of "not severe").

In her opinion, the ALJ found that two of Plaintiff's impairments met the regulatory definition of "severe": diabetes mellitus and obesity and that one of her impairments, peripheral neuropathy, did not. The ALJ did not evaluate at step two whether Plaintiff also suffered from degenerative joint disease, and thus implicitly found that the condition was not severe.

Degenerative joint disease, also known as osteoarthritis, is a condition wherein the cartilage in an individual's joints breaks down and causes pain, swelling and reduced motion in the affected joint. *See* Medline Plus, Osteoarthritis,

4

http://www.nlm.nih.gov/medlineplus/osteoarthritis.html (last accessed July 2, 2007). Degenerative joint disease is commonly diagnosed through: a detailed clinical history; a physical examination; x-rays which reveal cartilage loss, bone damage, and/or bone spurs; MRI; and joint aspiration.  *See* National Institute of Arthritis and Musculoskeletal and Skin Disorders, Handout on Health: Osteoarthritis, http://www.niams.nih.gov/hi/topics/arthritis/oahandout.htm#6 (last accessed July 2, 2007).

In support of her argument that she suffers from degenerative joint disease, Ms. Thomas notes that: (1) she has repeatedly complained of leg pain, (2) x-rays taken in 2004 showed degenerative changes in her left knee, (3) she is obese.  The medical records cited by Plaintiff that pertain to complaints of joint pain reveal that: on November 18, 2003, she complained of right ankle pain due to a fall, (Tr.  146); on December 30, 2003, she complained that her right knee "slips out from under her," (Tr.  139); on January 15, 2004, she complained of right knee pain and an X-ray taken soon thereafter revealed mild degenerative changes in the medial compartment of the right knee and patella and an X-ray of her left hip was normal, (Tr.  212-14); on July 27, 2004, she complained of left arm pain but an X-ray of her wrist was negative, (Tr.  225, 231); on January 3, 2005, she complained of left hip pain due to a fall, (Tr.  243, 245); on February 25, 2005, she complained of left hip and bilateral knee pain but an bilateral X-ray of her hips showed no evidence of significant degenerative disease, (Tr.  259, 271).

However, Plaintiff does not point to any records indicating that she has ever been diagnosed with degenerative joint disease, despite the fact that she presented to various physicians due to pain in her joints.[3]  Indeed, as pointed out by Defendant, not only was Plaintiff

---

[3] Plaintiff's attorney submitted to the ALJ an extremely helpful summary of the various objective and clinical evidence that supported her disability claim.  (Tr.  121-123.)

never diagnosed with degenerative joint disease,[4] but she has consistently demonstrated a normal range of motion in her hips, knees and legs, and X-rays taken of her joints were either unremarkable or revealed only "mild" degenerative changes. (Tr. 143, 212, 224, 231, 246, 252, 259-60, 285-86.) Therefore, because Plaintiff has the burden at step two to prove that she experienced a form of degenerative joint disease which met the regulatory definition of "severe," and she obviously failed to meet this burden, the ALJ's implicit finding at step two that her condition was not severe is supported by substantial evidence.

Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ based her decision solely on the findings of the non-examining state agency physician who examined only a portion of Plaintiff's medical records. Plaintiff correctly points out that the medical expert issued his opinion on April 20, 2004, (Tr. 127-134), and therefore did not review a set of 4 exhibits, (Tr. 205-286), that Plaintiff submitted to the ALJ after this date. However, Plaintiff's assertion that the expert's report was the only piece of evidence upon which the ALJ relied to formulate her RFC is incorrect. In her opinion, the ALJ not only referenced the additional medical records submitted by Plaintiff, (Tr. 14-15), but discussed the conflicts between Plaintiff's testimony at the administrative hearing regarding the severity of her impairments and the complaints she voiced to the various physicians who treated her. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (noting that an ALJ is entitled to determine credibility and weigh testimony); *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir. 2000) (noting that an ALJ's credibility determination is entitled to great deference). The ALJ

---

[4] Indeed, on May 13, 2002, approximately two years before Plaintiff's alleged onset of disability, a doctor at St. Paul University Hospital ruled out arthritis as the cause of her ankle pain. (Tr. 176.)

further cited medically acceptable diagnostic evidence in the record, including X-rays of Plaintiff's right knee and hips which showed mild degenerative changes in the knee and no indication of degenerative changes in her hips, (Tr. 15), and noted that Plaintiff was able to work prior to the alleged onset of her disability, despite having been diagnosed with diabetes as early 2000, (Tr. 202-04), and intermittently complaining of leg pain and swelling.

Finally, Plaintiff argues that the ALJ improperly determined that her complaints of disabling pain were not credible. In her opinion, the ALJ cited the following three factors in support of her determination that Plaintiff's complaints of pain were not credible: (1) Plaintiff's administrative hearing testimony regarding the severity, location and duration of her pain was not supported by her reports to her treating physicians regarding her pain, (2) her medical records did not show a medical condition that could reasonably be the cause of her pain, and (3) Plaintiff was able to work from 2000 to 2003 despite voicing complaints of pain similar to the pain she reported after her disability onset date. (Tr. 15.)

Pain is disabling only if it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Haywood v. Sullivan*, 888 F.2d 1463, 1470 (5th Cir. 1989) (citation omitted). Where pain is not of a disabling nature but is alleged to limit a plaintiff's capacity to perform work-related activities, the pain must accompany a "medically determinable impairment that could reasonably be expected to produce ... symptoms such as pain." § 416.929(b). An ALJ's decision regarding the impact of pain on a plaintiff's RFC should be based on a review of all of the available evidence including the plaintiff's medical history; the medical signs and laboratory findings; and statements from the plaintiff, her treating or examining physician or psychologist, or other persons regarding the effect of the alleged pain on the plaintiff. §

416.929(c).

At the administrative hearing, Ms. Thomas testified that she is diabetic and has experienced continuous sharp pain in her right leg since early 2001 when she worked as a shoe sorter at Goodwill Industries. (Tr. 298-300.) She stated that doctors have told her that her diabetes and leg pain may be related, but she acknowledged that no doctor has definitively opined that such a connection exists. (Tr. 302-03.) She testified that her doctors have given her medication for her leg pain and that it has helped. (Tr. 303.) Plaintiff explained that she quit working as a sorter after she began frequently falling at work. (Tr. 300.) She estimated that she currently falls approximately once per month when walking. (Tr. 304.) Plaintiff appeared at the hearing using a cane and testified that she does not attempt to walk without it. (Tr. 304-05.) However, she acknowledged that it had not been prescribed by a doctor. (Tr. 304-05.)

The undersigned finds that the ALJ's credibility determination as it relates to Plaintiff's reported pain is supported by substantial evidence. Although there is ample medical evidence demonstrating that Plaintiff is obese, has diabetes mellitus and sought treatment for pain in several areas of her body, there is scant evidence supporting her claims that she suffers from disabling pain or from pain that consistently limits her capacity to perform work-related activities. As noted by the ALJ in her opinion, although Plaintiff testified at the administrative hearing that she has experienced leg pain lasting longer than one year, she has never reported to her treating physicians that she experienced long-term pain and no physician has ever opined that Plaintiff's pain results from a specific medical condition, such as her diabetes. Although Plaintiff sought treatment for pain in her right leg, hip, knee and/or ankle on 7 occasions from April 26,

8

2003, through February 9, 2004,[5] it is clear that Plaintiff did not consistently experience right-side pain during this time frame. (Tr. 139, 146, 153, 206, 212, 215.) Indeed, on November 18, 2003, she indicated that her right leg and ankle pain was due to a fall she suffered the previous day and on January 15, 2004, she reported that she had only been experiencing right knee pain for the past two weeks. (Tr. 146, 212.) Likewise, although she sought treatment for pain in her left leg, knee and/or hip on five occasions from May 22, 2004, through March 3, 2005, the medical records reveal that she did not consistently experience left-side pain. (Tr. 137, 225, 243, 256, 271 ). Examining her medical records in sequential order reveals that she varyingly complained of pain lasting for two months (January 3, 2005), (Tr. 245), one week (February 25, 2005), (Tr. 271), and one month (March 3, 2005), (Tr. 258). Furthermore, as recognized by the ALJ, Plaintiff's medical records indicate that she started complaining of leg pain as early as April 23, 2003, but did not quit working until February of 2004.

---

[5] Plaintiff complained of bilateral leg pain on February 14, 2005. (Tr. 277.)

**RECOMMENDATION:**

For the forgoing reasons, it is recommended that the District Court enter its order AFFIRMING the decision of the Commissioner and DISMISSING this action with prejudice  A copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 2nd day of July, 2007.

                                                Wm. F. Sanderson Jr.
                                                UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation.  Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996)(*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.